In the reply brief, my predecessor cited a case called Pacific Fisheries, which is an unpublished opinion. That citation was improper, and with your permission, I'd like to withdraw the citation. All of the appellees, other than IBM appellees, have settled this case. And so we're here to talk about IBM Denmark and IBM Corporation. Do you look surprised? Everything's out of the case except the IBM case. Yes. Okay. That's pursuant to the Ninth Circuit order that was entered. So hopefully that's clear. I'd like to address the two entities separately, starting with IBM Denmark. I'm in Denmark. Unfortunately, with respect, somewhere along the way, I think the district court lost track of the fact that this was a motion to dismiss under 12B2, not a trial in the merits. The authorities cited by us, and actually in the reply brief by IBM, hold that it's a de novo review by you, but more importantly, the allegations of the complaint need to be accepted as true unless controverted by evidence submitted by the movement. In this case, the only evidence submitted by the IBM Denmark in support of the motion to dismiss was. Am I wrong? I understood the district court granted summary judgment. That was with respect to IBM Corporation. That's down the stream. All right. Go ahead, Stephen. Right. As to IBM Denmark, the motion was granted for lack of jurisdiction, a motion to dismiss. And the only evidence before the court other than the allegations of complaint was a declaration from the general counsel of IBM Denmark saying that IBM Denmark did not have any direct contact with PACOM, my client, but the allegations of the complaint were that IBM Denmark had effectively stolen $16 million from my client by holding it, that they knew it was for PACOM, that they knew that money was due to PACOM, and the declaration of Mr. Andrews submitted with that said that they knew PACOM was in California. And so what we say — Doesn't the case law require more than that? In other words, it isn't simply that they know it, but that they are specifically targeting PACOM in California? Absolutely, Your Honor. And it's going right to the heart of the case, as you are. The question is, what does specifically targeting PACOM in California mean? What does the complaint say, first of all? The complaint says that IBM knew the money was PACOM's money and knew that they were wrongfully withholding it, besides the fact that they withheld it. The complaint also makes a series of allegations that show essentially what the train of this money was supposed to be. And what we've been told is that there was IBM and then there was a company called GSPL, and then GSPL submitted the money to the bank. Oh, I'm sorry. GSPL submitted the money to IBM, IBM submitted the instructions to the bank. And what the defense is, is that IBM says, well, we had a dispute with GSPL unrelated to PACOM, and so that's why we held this money. But GSPL was only a intermediary. They never had the entitlement to the money. But what I'm trying to find out is the we've identified the problem is it's specifically targeted. Right. The complaint, as you describe it, and I don't have it in front of me, seems not to specifically allege that it was specifically targeted. It seems to allege that they knew it. They allege the fact, Your Honor, that the money was stolen, essentially. I'm using the pejorative term for short. That IBM knew it was PACOM's. IBM knew, as I said, this declaration, so that IBM knew PACOM was in California. It does not say, and to hurt PACOM, we specifically targeted PACOM by stealing the money. But I would suggest that the CE distribution case, which is the case where it was an Arizona distributor who had an exclusive distributorship for electronic equipment. There was a New York party that started to sell in New York that same equipment. And in the CE distribution case, they said that's enough, basically. You knew that this was going to harm the Arizona resident in this case, in this case California. And you knew that. And therefore, that's enough for targeting. You don't have to go out with a provable, fine, described malice toward the target. You need to know, in this case, that it was their money, that they were in California, and that you were wrongfully withholding that. So how is that different than knowing it? I mean, this is a rather fine lattice being described here. No, I understand, Your Honor. Obviously, that is the issue in the case. I think that the cases talk about the difference between foreseeability and targeting. And I think foreseeability is understood in terms of someone's working on a boiler in New York. They know it's going to be shipped to California. They know people, if it's defective, people will be injured in California. And clearly, that's not enough for specifically targeting. But when you are addressing conduct that specifically is directed toward not just something legitimate, like I'm working on a boiler, but I'm stealing your money, I don't think you need more than that. I know it's your money. Nobody was, the, at least IPM's version, Denmark's version is, you know, we weren't, we didn't care whose money it was. They were bystanders, essentially. But that's not what they complained about, Your Honor. And actually, they don't actually say that in the declaration. The declaration of Mr. their general counsel, whose name I'll come up with in a second, doesn't say anything about that. The only thing he says is, we had no direct contact with PACOM. So, again, going back to the standards on a motion to dismiss, I think this court respectfully has to accept the fact that IPM Denmark knew that they were wrongfully withholding this money, knew that it wasn't GSPL's money, but PACOM's money, and knew that PACOM was located in California. And at a motion to dismiss stage, I think that is sufficient to get us past the motion to dismiss. The second point is the IBM US. And in thinking about this, this is a classic hiding the P and then saying, why didn't you find the P when you get to the summary judgment? You had a summary judgment motion in this case that was filed based upon one affidavit, and that was Gerard Sainz, Gilbert Sainz, excuse me. Mr. Sainz was not disclosed as a witness to, with any knowledge of anything in this case by IBM. Did you object to that? What we did, Your Honor, was we didn't object to the disclosure. What we did is ask for a reopening of the discovery deadline based upon the fact that this initial disclosure was basically. Did the district court ever rule on that specific issue? Yes, it did, Your Honor. And it said? It said basically that he didn't believe that we were entitled to reopen discovery. Did he say why this late declaration was made? Well, he adopted kind of what I think is, and again respectfully, a superficial analysis that you had 18 months to do discovery. Why didn't you find this out? And the reason is we didn't have 18 months to do discovery. IBM Denmark was in the case one month from October to November of 2001, before they filed their motion to dismiss on jurisdictional grounds. We responded in December, and the court took it under submission without oral argument in January and then decided in March of 2002. So there was never any opportunity for us to conduct any discovery of IBM Denmark during the time they were parties in the case. They never filed an initial disclosure. We then, through the summer and fall, did discovery of third parties that indicated to us that IBM U.S. was in fact the action party. And so we filed an amended complaint in October of 2002. This was the first time that IBM U.S. was a party to the action. They responded by filing consecutive motions to dismiss, which drug on until January of 2003, at which time we filed our second amended complaint. And despite the fact that the federal rules required an initial disclosure from IBM, they didn't file any initial disclosure until February of 2003, at which time they only disclosed three witnesses who they said worked for IBM Denmark, and they didn't give us their names or addresses. When we attempted to find out who they were and talk to them, because they were identified as IBM Denmark, we were told by the general counsel of IBM Denmark that IBM U.S. considered them their employees, and so we couldn't talk to them. So we served document requests and interrogatories, and we got zero. We got no information whatsoever, and the most, in my view, outrageous part of that was that IBM U.S. now took the position that IBM Denmark was a separate entity, and therefore they didn't have to produce any documents that might relate to IBM Denmark. They relied on a case called citric acid, which is clearly not applicable, because in that case we had two Coopers and Librans, but they were just using the name. They had no legal or ownership relationship. So what exactly do we have before us now? There's this whole discovery dispute. I'm sorry. So what I'm trying to figure out is this whole set of disputes before us, what we really have is a motion for summary judgment. You made a 56-F motion. Does that wrap in all of these disputes, essentially? Yes, Your Honor. And our basic position is you shouldn't affirm summary judgment. It's based upon one evidentiary element, which is a declaration from a witness who's not disclosed until two weeks after the discovery cut off, and he signs the declaration two weeks after that. They filed this discovery disclosure in February, February 1 of February 18th of 2003. It doesn't list anybody from IBM Corporation. It only lists three employees of IBM Denmark without identifying any information about them, including where they are. They then, on May 1, after the discovery cut off of April 15th has passed, they file an amended or a supplemental disclosure, again not disclosing a single document as the first one didn't, And they list now nine U.S. IBM people and 16 U.S. Denmark people. Slipped into the nine U.S. is this Mr. Sainz. Two weeks later, they file a motion for summary judgment based solely upon Mr. Sainz's declarations that we don't know and we don't have any involvement. And that's not the way the system is supposed to work. All right. What about the issue of whether my understanding is that you are now arguing solely on a direct liability theory and not an agency theory? That's correct, Your Honor. All right. And so there is a contention that you did not raise that below. How do you address that? I believe we did raise that below, Your Honor. We set forth the section in our brief that talked about that and discussed the evidence of direct liability. They responded by not submitting our opposition brief to summary judgment, but simply submitting the table of contents and then arguing that we must not have made the argument. We concede that we focused below on the agency theory. But you can see from our brief that we did raise the facts and the issues relating to the direct liability theory. And much of the discovery we were asking the trial court to grant us was specifically related to the direct liability theory, discovering the facts now based upon their May 1, 2003, what they called initial disclosure, which was actually eight months after they'd been served. And so I think we did raise it. I think the contention that we didn't is not supported by what they submitted. Is there, would you argue that there is currently evidence in the record on which you could prevail on a direct liability theory or simply that the 56th motion should have been granted to allow you to do that? As you know, I'm predecessor, I'm successor counsel, and so I've got to give you my answer to that. I think that the question not is whether we can prevail but whether we submitted sufficient facts to defeat summary judgment. Prevail on summary judgment. Prevail on summary judgment, right. And I think it's a very close question. We were totally prevented from any discovery document. I mean, you have a situation where summary judgment is granted. Not a single document has been produced by IBM Denmark or IBM U.S. in this case. We take a deposition of a person most knowledgeable, and that person only knows the organization chart status of various entities, despite the fact that our deposition notice called for much more than that. And then we get this sandbagged supplemental disclosure after discovery has been closed, and the answer they come back to us with is, well, you kind of fouled up, you trusted us that we would be forthright with you, and therefore you waived things. Did you ever move for sanctions against the defendants? No, Your Honor. What we did move for is reopening discovery so that we could conduct the discovery necessary to oppose. It sounds to me as though perhaps the motion for sanctions against the defendants might have gotten some results from the trial judge. That's possible, Your Honor. I mean, the problem we have is in the district court, as you all know, we have you can't take discovery until you've had this early meeting of counsel. So if you file enough motions to dismiss, you delay that. And then when you file interrogatories and document requests, as we did here, and get just nothing, zero, well, then you have to go through this elaborate meet and confer process. So we did have a motion to compel on both of those subjects on at the time the summary judgment motion was granted. They were before the magistrate. The magistrate hadn't ruled on them yet. The judge didn't rule on them. Was the judge been assigned to the case at this time? Pardon? Was it being handled by a magistrate at this time, or had the judge been assigned? Just the discovery, Your Honor. The judge was, Judge Otero was the judge in charge of the case. But the way they typically operate, as you know, the magistrate takes the first cut at discovery issues. And the magistrate, in fact, in this case, did not take any cut at the discovery issue because he found it moot, because the summary judgment had already been granted. So the motion to compel was never decided. Is that what happened? It was not, Your Honor. Well, it was decided that it was moot. But it wasn't decided – it was never decided on the merits before the judgment. Never. And what did the district judge say about the motion to compel? The district – well, the motion was, as I said, before the magistrate. Had the district judge was somewhat confused about the timing. He thought it was late. It wasn't late. No. Did he say anything about the merits of it, about why it wasn't relevant to the 56F motion or why it wasn't relevant to the merits of the summary judgment? I may have lost track of your question, Your Honor. The motion was filed April 15, which was within the discovery period. The judge in his order, his order on the reconsideration erroneously stated the motion hadn't been filed until I think it was May 19th and said, so therefore, how could it have any impact? The judge did not address the motion. The motion was before the magistrate. I believe it had been argued at the time of the summary judgment hearing. And the magistrate subsequently ruled that it was moot because the summary judgment had already been granted, so the – Did the district judge ever say it didn't make any difference, it wouldn't have mattered? He said it wouldn't have mattered because the – it had been filed after the discovery cutoff, which is – That's the only reason he gave? That was my reading of his order, Your Honor. And as I said, I believe that that conclusion was wrong based upon a conclusion as to the date. But I think the point is that obviously the district judge didn't rule on the merits of that – of the motion to compel because he affirmed the magistrate judge's finding that it was moot. If he'd already ruled on it, he wouldn't have needed to do that. So we just – our position on the U.S. side of this thing is that we have a system where people are supposed to have the opportunity before a summary judgment motion is granted or even heard to actually test an affidavit to find the documents that relate to the issues, to depose people as they are identified in those documents. And we were completely deprived of that opportunity in this case. And for the defendant – the appellees to come back and then say, well, you had 18 months, just doesn't track with the timeline. We didn't have 18 months. They very effectively prevented us from discovery. And we believe that the case should be reversed with instructions to the district court. Well, one last question. What was the motion to compel about? What had you asked for at that juncture and not gotten? Well, the basic – Document requests, basically? Pardon me? It was document requests. Document requests and interrogatories. And interrogatories asked for us for them to identify who was involved in all these transactions. But you didn't notice any depositions? We noticed the person most knowledgeable, Your Honor. And the person who came didn't know a lot, you thought. Right. And the reason – I believe the reason it was sequenced like that is in a complicated case like this, just to notice a deposition without having the documents is an exercise in futility. So we were trying to proceed in the logical manner. And we just ended up, particularly with this late disclosure of all these witnesses, being totally sandbagged. The problem is that the motion to compel was filed on the very last day, right? So if you'd gotten everything you asked for, you still wouldn't have had any depositions? Well, we would have, Your Honor. Same case – same situation as the Garrett case, which was a case where a motion to compel was pending. If it had been granted, it would have been – it was filed before the discovery cutoff. But if it would have been granted, that would have been after the discovery cutoff. And so you still would have needed to say, yes, okay, the motion to compel is granted, it's valid. And, therefore, you're entitled to take some depositions because we don't do this on sandbagging. We do this based on what the actual facts are.  Thank you, Your Honor. Thank you. Good morning, and may it please the Court. My name is Sean Morgan, with me is Ezra Ross, appearing both on behalf of IBM and IBM Denmark. Let me begin where counsel left off, which is the IBM summary judgment order. As counsel conceded, he's new to the case, and I believe there were some inadvertent misstatements of the record made, which I would like to clarify. And I'll do that by addressing two of the questions that were raised. First, was it necessary for the district court judge to reach the merits of the pending motions to compel? And, two, did he improperly base his rejection of the 56-F request on a mistaken notion about the timing of the motions? And the answer to both those questions is no. First, under the cases everyone has cited, including Garrett from PACOM's side, a court assessing a 56-F request goes through a two-step process when there are motions to compel involved. First, even assuming the merits of the motions to compel, has the moving party, the 56-F movement, identified facts that that discovery would reveal that would bear on summary judgment? How can you identify facts when you don't get any information? Well, exactly. They've got a series of document requests, and they had the move to compel further answers from the 30B6 witness. And they went to the district court and said, these are the sorts of things we would like to find out, and these are the things that we think would be in these documents. And the district court analyzed those and did not base his 56-F denial on a untimely motions ruling. Instead, his order specifically says, and I think it's important that we look at it, and this is at Record Exhibit 27. This is at page 12 of the order. The discussion begins at line 6 and goes through line 20. But at the end, the last few lines, he says, But, I mean, I guess I have the same problem as Judge Panner. We know in general what they were looking for. They were looking for any indication that somebody who was an employee of IBM Parent rather than IBM Denmark was involved in these transactions. Now, more specific than that, since you know how your company operates and they don't, what are they supposed to ask to? Well, I mean, isn't it the case in every 56-F request that the parties don't know exactly what they think they're going to get? There's always – Well, that's right. Their burden is still – We know in general what they were after. I mean, in general, we know what they were after, right? Right. But the things they asked for, for example, they said, We would like to know the identities of people who worked in certain divisions of IBM. Right. And the district court judge analyzed that. And the decision was, and this was in the summary judgment order, the fact that they worked for these divisions is irrelevant to showing in the day-to-day control or the necessary substantive facts to create a triable issue. But if they got their names, they could depose them. If they deposed them, they could find out what they actually do. And they could find out whether – they had at least, from what I can see, some indication that there were people who were in these practice groups across companies who had something to do with this. And they were trying to get behind it. And they – how were they supposed to get behind it except by asking for some documents and reading them? Well, agreed, Your Honor. Although they had – let me go back for a second. And the notion that there was no discovery obtained by PACOM in this case, that there was substantially no discovery, is incorrect. IBM did not rely solely on this declaration in its summary judgment motion. It relied on testimony from the 30B6 deposition that PACOM took. And the topic of that deposition was the relationship between IBM and IBM Denmark. But isn't there something odd about producing one person as the person who is most knowledgeable and then filing a declaration from a different person as the person who is most knowledgeable? Well, the person – well, person most knowledgeable is a misnomer. It's a corporate designee. And it is – the case law is clear that you are able to educate a witness. They're there to testify and set forth the company's position. And the more important point is this covered such a range of activities that you needed more than one person to testify. What about the fact that there were no initial disclosures and that the person who the whole declaration – the whole case rested on his declaration was never disclosed until after close discovery? There were initial disclosures made at an earlier point. They did not – Three witnesses? Correct. Because the initial disclosures are what does IBM think it will reasonably rely on to supply its defenses. At that stage of the litigation, our defense was to have – from IBM Denmark come forward and explain what they were doing and say that IBM US was not involved. The only reason Mr. Sands became relevant to IBM is because PACOM seized on this theory late in the day that just because at IBM Denmark there were people within a group called Software Delivery and Fulfillment and that IBM also had a group called Software Delivery and Fulfillment, that therefore there must be some connection between those. And so we brought in Mr. Sands to explain that IBM and all of its subsidiaries, because they perform common functions throughout the world, have groups that are similarly named. But he went on to explain there was no direct day-to-day control from IBM to IBM Denmark, that IBM US was not involved in any way in these particular transactions. So PACOM never asked a question that should have been answered that would have yielded Mr. Sands as the response, for example? Well, in PACOM's 56F application, they never said what they wanted to ask Mr. Sands. They didn't even – They obviously wanted to cross-examine Mr. Sands and see if what he said was true. But I'm asking a more specific question, which is in the discovery requests that were not responded to, was there a question that would have yielded Mr. Sands as the answer had it been answered? I don't believe so. I don't want to state that emphatically, because I do want to point out, it is a mischaracterization to say the discovery wasn't responded to. The discovery was responded to, for instance, by IBM US saying, we don't have any documents that bear on any of these issues because we weren't involved in this. The only thing we refused to produce is to say we weren't – we don't have any legal control or authority over IBM Denmark. And so you cannot come to us and ask for IBM Denmark's documents. You should have done that through a Rule 45 subpoena. We answered on behalf of IBM. I have a question, which I don't really understand very well, about whether or not parents can be expected to respond to discovery on behalf there. That goes to the merits of the motions to compel. And, again, we are operating under an abusive discretion standard where there is a two-part inquiry and you only get to the motions to compel, the merits of the motions to compel, if you found the information they were seeking would change the result on summary judgment. And Judge Otero found that they hadn't satisfied the first prong, and so he never needed to reach the issue of the motions to compel. But if, for example, they were entitled to get from IBM information from IBM Denmark's employees, why wouldn't that satisfy their problem? Because he assumed, even if they got it, that the information they had asked for would not change the result on summary judgment. Why is that? That's what I need to know. Well, because they asked for generalized categories of documents without saying, meeting their burden. The burden is very particularized. You have to say, these are the facts we think we'll get, and this is why we think there's summary judgment. And that burden increases when the facts you're postulating are out there, would have to contradict the developed record evidence. And here we had the 30b-6 witness, the Declaration of Beals Sands. Very bare bones, very general stuff. You have nothing specific about who worked in any of this or anything. It's just general stuff. Well, there's only – you can only be so specific by saying, we weren't involved. But that depends on the answer to the question of whether you had an obligation to produce discovery with regard to IBM Denmark. If you had an obligation to produce discovery with regard to IBM Denmark, then the generalities might not do it. If you didn't, then, of course, that's all there's going to be, and that would be the end of it. Well, again, ACOM specifically moved for reconsideration on the basis – a reconsideration of the summary judgment order on the basis that the motions to compel were out there. And the judge, again, considered the merits and found he didn't believe the information from IBM Denmark that they were postulating was out there was sufficient to change summary judgment. But while we're talking about the motion for reconsideration, I'd also like to address this issue of the timeliness of the motions to compel, because it is not undisputed that Judge Otero was incorrect about those being untimely. One of the motions was filed on the day of the discovery cutoff, but was not heard until a month after the discovery cutoff. The second motion, indisputably, was filed after the discovery cutoff. Now, as to the first motion, in Plaintiff's own case, the Garrett case, the court held that in assessing timeliness, the relevant consideration was whether the motion to compel was going to be heard before the motion cutoff. Here, it is undisputed that both motions to compel were set to be heard a month after the motion cutoff. Is that within the trial court discretion? I believe it is. I do not believe that's a matter of local rule or federal rule of civil procedure. I believe that is a matter of practice for each judge. And I believe that the Judge Otero's scheduling order is consistent with that. It's not explicit about it, but I think it can be read to say all discovery must be completed by that period. And certainly, that is the way he interpreted it. That puts a lot of power in the hands of the district judge to be able to decide when it's going to be heard. Well, I think what you- The defining date for- The court has set forth from early in the case a Rule 16 scheduling order. Parties can judge the time they need appropriately to get these issues resolved. But while the summary judgment motion was pending, and this is a key issue, while the summary judgment motion was pending, that's when PACOM brought their motion to amend the Rule 16 scheduling order. So they recognized all these issues. They went to Judge Otero. They said we need more time because even if this discovery were compelled, it's past the discovery cutoff. They said IBM's been stonewalling. For how long was IBM, not IBM Denmark, in the case and subject to discovery? I'm not litigating a motion to dismiss. I believe it was about, well, from the time the summary judgment motion was filed or- From the beginning. How many months total was IBM- I think the last motion to dismiss may have been resolved in March or April of 2003. So never? On that period? Well, no. I guess it was February. It may have been February. Two or three months, I believe. Right. So total. So when he says they were dithering, they literally had a total of two or three months to do this. Well, that's true, although, again, IBM Denmark, and there was a dispute about these IBM Denmark documents. They were always subject to a Rule 45 subpoena from day one. There was a case existing that apart from IBM being involved, it went on against the other parties. And so they had a reason to do it until they knew that IBM was their target. Well, they did have a reason to do it- On this issue, they had no reason to do it. Well, I don't know about this issue. They alleged from the beginning that some IBM entity was holding some of the funds. Yes.  IBM was originally dismissed. IBM Denmark was dismissed. At that point, the issue isn't whether IBM is the operating entity. It's whether IBM Denmark was operating and was specifically targeting them in California. It has nothing to do with this question. So until that's dismissed, IBM comes back in, the motion's dismissed and resolved, and it's finally time to do discovery, they had no reason to be doing this. So basically, they had no reason to be doing it except for about two months. I mean, I guess our position would be it did relate to a lot of the other issues in the case, but that's- Okay. So I have another question. Do you think there is a waiver or isn't a waiver here with regard to the- I mean, is that almost the key question at this juncture? I mean, they've switched theories partly, but I mean, my looking at their papers in district court suggests to me that they did adequately raise it. But I'd like to hear what you have to say about it. Sure, Your Honor. They've introduced Exhibit 23, which is a portion of their summary judgment opposition. It is a fact heading in the facts section of the brief where it says IBM had some direct involvement. That is the only place in which that brief that the word direct is used in this context. The argument, when they went to apply those facts to the law, the only arguments they made to the district court were alter ego and agency theories. There is nothing. They didn't cite one of these direct liability cases, not Best Foods, not Laird. They didn't argue it at all from the facts. Now, I think there is good reason, whatever discretion this Court has to consider a new theory at this time, to not exercise that discretion in this case. And the biggest reason is what PACOM is now doing is trying to use this new theory to explain why the Court erred in denying the 56F request. They're saying, oh, the Court should have considered that this outstanding discovery might have been relevant to our direct liability theory, a theory that they never argued to the district court. And so, you know, you have a situation where you don't have the record below developed in the way that it would be if they had actually raised this issue. IBM would have responded. Presumably, Judge Otero, who issued a very thorough summary judgment order, would have addressed this theory as well. And we wouldn't be operating, you know, in the vacuum on this issue that we are now. I'm a little confused about what you said about the plaintiff's memorandum of points of authority in opposition to the summary judgment by IBM. There's a document that seems to run from pages one to six, as far as I can tell, sequentially, with nothing missing. And the other one is in the record. Where in the record are we, Your Honor? Well, I'm not sure. It's a document called Plaintiff PACOM Billing Services, Inc.'s Memorandum of Points of Authority in Opposition to Motion for Summary Judgment by Defendant IBM. And it certainly doesn't seem to focus particularly on agency theory. Do you have the exhibit number, Your Honor? No. No, I don't. Sorry, I don't. But anyway, it says, for example, it talks in conclusion about IBM SDS and IBM Global Services and what their role was. I believe this may be the fact portion I was referring to. I don't know what you're referring to. It's headed conclusion. And it says, if IBM is really an ombudsman's parent subsidiary organization that performs all its business functions through its subsidiaries, why was it necessary for IBM to organize itself into business units like IBM SDF and IBM Global Services? And basically, that's the conclusion to the memorandum I'm talking about. It's not a fact section. Well, Your Honor, again, they did not argue any of the direct liability cases. And in fact, they brought two motions for reconsideration on the summary judgment order. And if they had been intending to pursue a direct liability theory, and if, as they now contend, Judge Otero manifestly refused to consider that theory, that would have been grounds under the local rules for reconsideration. And they didn't raise this in either of those. That's not a theory, though, right? I mean, you don't have to – you can't not appeal something because you didn't file a motion for reconsideration. No, no, no. No, I'm suggesting – I'm not suggesting that – I think it's suggested the fact that they didn't believe they were raising a direct liability theory below. In the short remaining time, Your Honor, I'd like to turn to the jurisdictional motion with respect to IBM Denmark, unless there are other questions. There was also a few misstatements by counsel with respect to the record on the jurisdictional motion. First, counsel's argument was based on the assumption that there had been an allegation in the complaint and declaration evidence from a PACOM executive that IBM Denmark knew PACOM was located in California. In fact, that's not what either document says. The only allegation in the complaint is that IBM knew of PACOM in a separate allegation in the party section that PACOM is a California company. That's not the same as saying IBM Denmark knew where they were located. And so, too, for the Clay Andrews Declaration, which is Record 4A. This is the declaration that PACOM submitted in opposition to motion to dismiss. And neither does that one state that IBM Denmark knew PACOM was a California company. It at best suggests PACOM is a California company. Nothing about IBM's level of awareness. And, of course, that's critical to two of the prongs in the express aiming test. Obviously, if you don't know where the plaintiff is located, you couldn't have been expressly aiming conduct at that forum. And second, you could not know that the brunt of the harm was likely to be suffered in that forum if you did not know the identity. And there's an additional reason that Judge Preggerson, who entered that order, reason which I think is important. In this multiple chain of parties, the parties in between PACOM and IBM were aggregators of these credit card transactions. It wasn't they weren't operating solely on behalf of PACOM. They had dozens and dozens of companies they were processing transactions for. And so when looking at IBM's conduct, IBM Denmark's conduct, and where it was expressly aimed, if you look back down the chain, Judge Preggerson had to look at this one of two ways. I can look to the end of the chain to this wide array of entities who could be scattered all over the world. And is it reasonable to conclude that IBM Denmark, who probably had no awareness of where most of these entities were located, was expressly aiming its conduct at all of these jurisdictions? Or is it more reasonable to say, I'm going to look at the next in line in the chain, the company they had directly contracted with, and say they were expressly aiming their conduct at that entity, despite whatever consequences that may have down the line to all these merchants scattered around the world? And that is how he analyzed it. Second, just very quickly, the counsel's invocation of the foreseeability test in Hedrick. Hedrick was not an effects test case. That was a stream of commerce case. It didn't say anything about foreseeability being a test with respect to the express aiming requirement in the effects context. And if you were to accept, and I think, Your Honor, Judge Berzon, you were getting at this, if you accept that, that collapses express aiming with the brunt of the harm prong. It says knowledge of where the harm would occur is now the same as express aiming. And all the express aiming cases are careful to say those are two separate requirements. Thank you. Thank you very much. Counsel, I think you have a teeny bit of time left. I'll give you about a minute. Okay, a minute to a minute and a half. Go ahead. Fifteen seconds, please. First, I don't know if you caught this, but in the discussion of why they didn't identify SANEs until after the discovery cutoff, counsel said, because PACOM late in the day came up with this theory that IBM was directly responsible, so we had to get SANEs. Well, they filed their motion for summary judgment on May 30th, well before the hearing, well before the motion, our opposition. So clearly they knew that was an issue. And secondly, last on the IBM Denmark point, is it more reasonable to assume that IBM knew this or more reasonable to assume that IBM knew that? Well, the point is we did also ask for discovery. IBM Denmark had been in the case for one month when they filed their motion. So that's another basis for our request. We ought to decide these cases on the facts, not upon unilateral affidavits we have no opportunity to examine and failure to produce documents. Thank you. I have a question. I have one question. This document that I was, this mysterious document that I was reading from, in the front of it it says discovery cutoff April 15th, 2003, motion cutoff May 19th, 2003. Right. What is the motion cutoff? Motion cutoff is the cutoff for the discovery or any motion? I think it's all motions, but including discovery, Your Honor. And our motion. That's why you thought it wasn't out of time. That's correct. That's correct. And the second one was filed April 28th. It was, thank you. Thank you very much. The case of pay cum billing services versus payment resources are nationally submitted. And we will hear the last case of the day, which is.
judges: Fernandez, Berzon, Panner